```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SHARON ILLAS, | Civil No. 14-4061 (NLH/AMD) |
| Plaintiff, | |
| v. | OPINION |
| GLOUCESTER COUNTY SHERIFF'S DEPARTMENT and COUNTY OF GLOUCESTER, | |
| Defendants. | |

**APPEARANCES**:

DANIEL M. KURKOWSKI
KURKOWSKI LAW, LLC
1252 ROUTE 109 S.
CAPE MAY, NJ 08204
     On behalf of plaintiff

CHRISTINE P. O'HEARN
BROWN & CONNERY, LLP
360 HADDON AVENUE
PO BOX 539
WESTMONT, NJ 08108
     On behalf of defendants

**HILLMAN, District Judge**

   Presently before the Court is the motion of defendants to dismiss three counts of plaintiff's four-count complaint, which alleges discrimination, hostile work environment, and violations of her due process and equal protection rights, because those counts are time-barred.  For the reasons expressed below, defendants' motion will be granted.

## BACKGROUND

Plaintiff, Sharon Illas, was hired as a sheriff's officer with defendant Gloucester County Sheriff's Department in March 2005. In May 2009, plaintiff attended an after-work function with her coworkers. Plaintiff claims that she had too much to drink, and she accepted a ride to her sister's home from Sergeant Donald Gentile, who is a relative of the Gloucester County Sheriff. Plaintiff claims that she was sexually assaulted by Gentile in his car in her sister's driveway. From that moment until she was forced to resign on November 1, 2012, plaintiff claims that she suffered pervasive harassment in her workplace, including unwarranted reassignments, disciplinary write-ups, the failure to investigate her complaints, the failure to accommodate her physical condition, and her coworkers' and superiors' demeaning, embarrassing, and "nit-picking" treatment of her.

Plaintiff has filed a four-count complaint against Gloucester County and the Sheriff's Department[1] for violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq., and for due process and equal protection

---

[1] The County and its Sheriff's Department are the same entity for liability purposes.  See Franks v. Cape May County, 2010 WL 3614193, *7 (D.N.J. 2010) (citing N.J.S.A. 40A:14-118 and cases).

violations of the federal and state constitutions.  Defendants have moved to dismiss plaintiff's complaint for claims that arise under the NJLAD prior to May 22, 2012 because plaintiff's claims are time-barred under the two-year statute of limitations.  Plaintiff has opposed defendants' motion, arguing that her claims are not barred under the continuing violation doctrine.

## DISCUSSION

### A.   Subject matter jurisdiction

Plaintiff has brought her claims for violations of the federal and New Jersey constitutions, as well as under New Jersey state law.  This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

### B.   Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed.R.Civ.P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the

4

factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

5

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).[2]

With regard to a motion to dismiss based on a statute of limitations defense, the law of this Circuit (the so-called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not

---

[2] To support her opposition to defendants' motion to dismiss, plaintiff submits an affidavit, along with several other documents, including doctors' notes, that are outside of her pleadings.  Those items do not affect the Court's analysis and they will not be considered.  As noted the Court accepts the well-pleaded allegations in the complaint as true and views them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

6

been brought within the statute of limitations. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002).

**C.   Analysis**

Defendants are seeking to dismiss Plaintiff's NJLAD claims.[3] The NJLAD provides, "All persons shall have the opportunity to obtain employment, . . . without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, nationality, sex, gender identity or expression. . . .  This opportunity is recognized as and declared to be a civil right." N.J.S.A. 10:5-4.  "Those commands provide the force underlying the frequent case law refrain that the clear public policy of [New Jersey] is to eradicate invidious discrimination from the workplace." Alexander v. Seton Hall University, 8 A.3d 198, 202 (N.J. 2010) (quotations and citations omitted).

Plaintiff claims that she suffered such discrimination in violation of the NJLAD from May 2009 through November 2012. Defendants argue, however, that the NJLAD's two-year statute of limitations bars her NJLAD claims through May 22, 2012.

---

[3] Defendants are not seeking to dismiss plaintiff's claims for violations of her due process and equal protection rights arising out of claims that an internal affairs investigator visited her home, despite knowing that she was represented by counsel, and tried to threaten and manipulate her into dropping her charges against Sergeant Gentile. (Pl.'s Compl. Count Four.)

7

Plaintiff's complaint reveals that during her employment from the incident in May 2009 through the date she resigned on November 1, 2012, she took three leaves of absence, which separate her employment into three time periods.

The first employment time period is May 2009 through November 2010. Plaintiff claims that the day after her alleged sexual assault by Gentile, he personally had her transferred to the warrants division, which is a plain clothes assignment. For the four years prior, plaintiff served as a uniformed sheriff's officer. During the days after the alleged assault, plaintiff claims that she told other sheriff officers what happened, and in June 2009, plaintiff claims she reported the incident to her superior officer, Sergeant Scott, who told her to forget about it because people do stupid things when they are drunk. Plaintiff claims that Sergeant Scott failed to investigate the matter and returned to her prior duties as a sheriff's officer. Plaintiff also claims that she was subjected to a hostile work environment, which she reported to Sergeant Scott to no avail.

Plaintiff also began to suffer from stomach pain, resulting in a November 2010 surgery to remove her gall bladder. When her doctor cleared her for "light duty" work in December 2010, plaintiff claims that defendants failed to provide her any accommodations by not giving her light duty assignments, which further evidences a hostile work environment. Plaintiff claims

8

that she had no choice but to stay out of work until she could work in her full capacity.

Plaintiff's second employment time period spanned from March 2011, when she was able to resume her normal work duties, through July 19, 2011. During this time, she claims that she was subjected to a hostile work environment, including an obscene text message and lewd comment from Sergeant Scott, and her complaints to the second in command, Under-Sheriff Charles O'Leary, were ignored. She was also transferred to the adult probation unit. On May 6, 2011, Plaintiff was hospitalized for stomach pain for four days. When she asked for light duty work, Sergeant Scott denied her request, which was also denied by two other superiors. After this, plaintiff claims that she was subjected to more unspecified harassment by Gentile and another sergeant. On July 19, 2011, plaintiff required additional surgery to drain a bile duct. When she was cleared for light duty on August 11, 2011, plaintiff claims that defendants refused to accommodate her with light work. She remained out of work until May 22, 2012.

On May 22, 2012, plaintiff returned to work in a civilian modified duty clerical position, and she reported to the head secretary for the Sheriff. Plaintiff claims that she was made a pariah in the workplace, and was harassed and demeaned. Due to the constant stress, plaintiff went on medical leave on July 10,

9

2012, and she had no choice but to eventually resign on November 1, 2012.

Defendants argue that plaintiff's claims relating to the alleged conduct that took place prior to May 22, 2012 are time barred under the NJLAD's two-year statute of limitations because plaintiff did not file her complaint until May 13, 2014. Plaintiff counters that, under the continuing violation doctrine, the two-year statute of limitations did not begin to run until the day she was forced to resign, because from May 2009 until her constructive termination on November 1, 2012, she suffered from one long continuous string of discriminatory and retaliatory conduct by defendants.[4]

The parties do not dispute that NJLAD claims are subject to

---

[4] To support the application of the continuing violation doctrine, plaintiff cites to Berry v. Board of Supervisors, 715 F.2d 971 (5th Cir. 1983), which provided a non-exhaustive list of three factors to aid in distinguishing between the occurrence of isolated acts of discrimination and a persistent, ongoing pattern, and which was adopted by the Third Circuit in Rush v. Scott Specialty Gases, Inc., 113 F.3d 476 (3d Cir. 1997). The U.S. Supreme Court's decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002) has superseded the Berry test. See Mandel v. M & Q Packaging Corp., 706 F.3d 157, 166-67 (3d Cir. 2013) ("It is clear that there is no longer a permanency requirement under the continuing violation doctrine and that the Supreme Court's decision in Morgan thus supersedes our opinions in West and Rush to the extent that we adopted Berry."). Since 2002, the New Jersey courts have followed Morgan in the context of NJLAD cases. See Alexander v. Seton Hall University, 8 A.3d 198, 203 (N.J. 2010) (explaining that the New Jersey Supreme Court in Shepherd v. Hunterdon Developmental Center, 803 A.2d 611 (N.J. 2002) adopted Morgan in the NJLAD context).

10

a two-year statute of limitations. Montells v. Haynes, 627 A.2d 654 (N.J. 1993) (concluding two-year statute of limitations of N.J.S.A. 2A:14-2(a) applies to NJLAD claims). To determine when the limitations period begins, the nature of the conduct said to violate the NJLAD must be considered. Discriminatory termination and other similar abrupt, singular adverse employment actions that are attributable to invidious discrimination generally are immediately known injuries, whose two-year statute of limitations period commences on the day they occur. Alexander, 8 A.3d at 202 (citing Roa v. Roa, 985 A.2d 1225 (N.J. 2010) ("A discrete retaliatory or discriminatory act occurs on the day that it happens.")).

When, however, "the complained-of conduct constitutes a series of separate acts that collectively constitute one unlawful employment practice, the entire claim may be timely if filed within two years of the date on which the last component act occurred." Id. at 203 (citation and internal quotation marks omitted). The "continuing violation" doctrine, recognized under federal Title VII law as an appropriate equitable exception to the strict application of a statute of limitations, has provided the analytic framework that has been used in the assessment of a NJLAD hostile workplace environment claim. Id. (citations omitted) (explaining that the New Jersey courts "turned to the equitable doctrine for assistance in

11

addressing the thorny factual circumstances of an ongoing workplace harassment claim that involved alleged incidents of both discrete and non-discrete acts of discriminatory workplace hostility"). "[T]he continuing violation theory was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination." Id. at 204 (citation omitted). The doctrine does not permit, however, "the aggregation of discrete discriminatory acts for the purposes of reviving an untimely act of discrimination that the victim knew or should have known was actionable." Id. (citation omitted).

Plaintiff's complaint here is an amalgam of discrete acts and general allegations of hostile work environment and discrimination. During plaintiff's first period of employment, plaintiff alleges what can be considered four discrete acts of conduct said to violate the NJLAD: (1) the May 2009 sexual assault; (2) her transfer to the warrants division; (3) Sergeant Scott's refusal to investigate her complaints; and (4) defendants' refusal to provide her with light duty work.[5]  See

---

[5] Defendants argue that they cannot be held liable for the conduct of its employees after work hours in circumstances completely unrelated to work.  Defendants also argue that they were not required to provide light duty work to plaintiff. Because the Court will dismiss plaintiff's claims based on events prior to May 2012, the Court does not need to address

12

<u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110 (2002) (explaining that "discrete acts" are easy to identify as discriminatory, such as termination, failure to promote, denial of transfer, or refusal to hire).  In addition to these discrete acts, plaintiff makes a general allegation that she was "subjected to a hostile work environment by Sgt. Gentile and other superior officers and employees of Defendants," but she does not provide any more specificity as to how they were hostile.  (Compl. ¶ 17.)

During plaintiff's second time period of employment from March 2011 through August 2011, plaintiff alleges what could be construed to be a series of discrete and non-discrete discriminatory acts by various actors, including disciplinary write-ups, transfer to the adult probation unit, unwarranted discipline, an obscene text message, and a lewd comment.  When plaintiff became ill again and her request for light duty work was rejected, plaintiff suffered an alleged discrete act of discrimination for failure to accommodate.

Plaintiff essentially concedes that many of the alleged acts of her superiors were discrete acts that were independently actionable, including defendants' failure to accommodate her. (See Pl. Opp. Br. at 14.)  It appears, however, that plaintiff

---

these arguments at this time.

13

views the defendants' alleged refusal to provide her with light duty work to be acts in violation of the NJLAD which persisted every day even during her time out of work from December 2011 through March 2011 and again from August 2011 through May 22, 2012.  This serves, she contends, to link the two employment periods together into one continuous violation not barred by the statute of limitations.

Plaintiff's position is untenable.  The defendants' alleged discrimination by failing to accommodate her physical condition is a discrete act, actionable at the time the act occurred.[6] "'Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the [statutorily prescribed] time period after the discrete discriminatory act occurred.'" Roa, 985 A.2d at 1231-32 (quoting Morgan, 536 U.S. at 113); see also Johnson v. State, 2013 WL 3329400, *2 (N.J. Super. App.

---

[6] To state a claim under the NJLAD for failure to accommodate, a plaintiff "must show that he or she (1) had a disability; (2) was otherwise qualified to participate in the activity or program at issue; and (3) was denied the benefits of the program or otherwise discriminated against because of his or her disability."  Wojtkowiak v. New Jersey Motor Vehicle Com'n, --- A.3 ---, 2014 WL 7403848, *5 (N.J. Super. App. Div. 2015) (explaining that the plaintiff must also show whether the accommodation was reasonable).

14

Div. 2013) ("Because plaintiff concedes that each of the discrete acts alleged in his complaint are independently actionable, his argument that these acts 'trigger' the continuing violation doctrine must fail."); Diaz v. Lezanski, 2011 WL 2115671, *8 (D.N.J. 2011) (explaining even though the plaintiff alleged a continuing failure to accommodate that started at the beginning of the 2006-2007 school year and continued throughout the remainder of her employment, the complaint pleaded only two discrete instances of failure to accommodate, the first being in September of 2006, when she claimed her requests for an elevator key and to have a single work station for the upcoming school year were denied, and holding that any claim for this first alleged failure to accommodate was time-barred by the applicable two-year statute of limitations because she should have known of any constructive or actual failure by September 2006, but she did not file her action until January 1, 2009, well after the two-year period had run); Durham v. Atlantic City Elec. Co., 2010 WL 3906673, *9 (D.N.J. 2010) (finding that plaintiff's NJLAD failure-to-accommodate claims accrued no later than November 21, 2005 because that was when the defendant unequivocally informed the plaintiff that it was denying his request for an accommodation as an eight-hour dispatcher, removing his pay and job protection, and transferring him to a non-union position);

15

Pisarz v. PPL Corp., 2010 WL 4942536, *3 (M.D. Pa. 2010) (holding that the defendant's alleged failure to accommodate the plaintiff by denying his request for a special chair is a discrete act of discrimination) (citing Tobin v. Liberty Mutual Ins. Co., 553 F.3d 121, 129 (1st Cir. 2009) (holding that when an employee's request for accommodation is refused, "the refusal is a discrete discriminatory act triggering the statutory limitations period"); Zankel v. Temple Univ., 245 F. App'x 196, 197 (3d Cir. 2007) (affirming the district court's dismissal of the plaintiff's complaint where plaintiff filed her EEOC complaint more than three hundred days after she made her final request for accommodation)); Mercer v. Southeastern Pennsylvania Transit Authority, 26 F. Supp. 3d 432, 442 (E.D. Pa. 2014) (employer's denial of a request for a reasonable accommodation is a discrete act of discrimination that is an independently actionable unlawful employment practice under the ADA).

    For the conduct that occurred prior to May 22, 2012, plaintiff has alleged, at most, two independent continuing violation claims based on an aggregation of plaintiff's allegations of hostile work environment.  See Morgan, 536 U.S. at 115 (explaining that a hostile work environment claim is different in kind from discrete acts because "their very nature involves repeated conduct," and unlawful employment practice "cannot be said to occur on any particular day. It occurs over a

series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own"). This classification of her claims does not save them, however, because defendants' alleged failure to accommodate plaintiff in December 2010 and August 2011 caused any claims for a hostile work environment up to those dates to accrue on December 2010 and August 2011, at the time of defendants' last discriminatory act of allegedly failing to accommodate her with light duty work. See Morgan, 536 U.S. at 117 (explaining that a continuing violation is a series of separate acts that collectively constitute one unlawful employment practice, and that "[s]uch a cause of action accrues on the date on which the last component act occurred").[7]

The Court does not question plaintiff's contention that she did not pursue her claims for defendants' alleged discrete acts prior to her November 2012 resignation because she feared the

---

[7] Defendants cite to a series of cases that found that the continuing violation doctrine does not apply to claims that encompass periods of lengthy leaves of absence. (See Def. Reply Br. at 3-5.) The Court views these cases to be distinguishable on their facts, notes that most pre-date Morgan, and that they fail to establish a bright-line rule that the continuing violation doctrine cannot be implicated if a plaintiff takes a leave of absence during a period of claims relating to a hostile work environment. Accordingly, we do not determine that the absences themselves preclude the finding of a continuing violation. Rather, we simply hold that the failures to accommodate were discreet acts triggering the running of the statute of limitations.

loss of her job and because she held the belief that defendants would handle the matter internally. (Pl. Opp. Br. at 14.) The purpose of a statute of limitations, however, is to prevent the litigation of stale claims, and "'to stimulate activity and punish negligence and promote repose by giving security and stability to human affairs.'" Kownacki v. Saddle Brook Bd. of Educ., 2014 WL 1809579, *6 (N.J. Super. Ct. App. Div. 2014) (quoting Gantes v. Kason Corp., 679 A.2d 106, 110 (N.J. 1996)). "Once memories fade, witnesses become unavailable, and evidence is lost, courts no longer possess the capacity to distinguish valid claims from those which are frivolous or vexatious." Galligan v. Westfield Centre Service, Inc., 412 A.2d 122, 124 (N.J. 1980). Those purposes are important here, as plaintiff's claims date back five years from when she filed suit, and they concern allegations of many actors to be proven mainly from people's memories.

Consequently, because plaintiff's attempt to save her time-barred claims under the continuing violation doctrine is unavailing, those claims that are based on event which occurred prior to May 22, 2012 must be dismissed.[8]

---

[8] The Court points out that even though plaintiff's NJLAD claims prior to May 2012 are time-barred, the "existence of past acts and the employee's prior knowledge of their occurrence, [] does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor

**CONCLUSION**

For the reasons expressed above, defendants' motion to dismiss plaintiff's NJLAD claims prior to May 22, 2012 will be granted.  An appropriate Order will be entered.


Date:  February 24, 2015          s/ Noel L. Hillman
                                  NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

---

does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." Roa, 985 A.2d at 1232 (quoting Morgan, 536 U.S. at 113).

19